#26770-a-LSW

**2014 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SHAWN CAMERON SPRINGER,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
STANLEY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                                   and appellee.


JAMIE L. DAMON
Pierre, South Dakota                    Attorney for defendant
                                                   and appellant.

\* \* \* \*

ARGUED OCTOBER 8, 2014

OPINION FILED **11/12/14**

#26770

WILBUR, Justice

[¶1.] In August 1996, 16-year-old Shawn Cameron Springer pleaded guilty and was sentenced to a term of years in prison for kidnapping Michael Hare. Springer is eligible for parole after he serves 33 years of his sentence. Based on subsequent United States Supreme Court decisions, Springer filed a motion to correct an illegal sentence. The circuit court denied the motion. We affirm.

## BACKGROUND

[¶2.] The facts which relate to the kidnapping, robbery, and murder of Michael Hare can be found in greater detail at *State v. Jensen*, 1998 S.D. 52, ¶¶ 2-17, 579 N.W.2d 613, 614-16. To summarize, Springer and Paul Dean Jensen, who was 14 years old, called for a taxi on the night of January 14, 1996, in Pierre, South Dakota. Springer and Jensen directed the driver, Michael Hare, to take them to a rural area near Fort Pierre. Once they reached a gravel road outside Fort Pierre, Jensen exited the taxi with a gun drawn and demanded that Hare get out. Hare obeyed and Jensen robbed Hare at gunpoint. Jensen then shot Hare in the chest. Hare begged for his life, but Jensen executed Hare by firing two bullets into his head. Hare died instantly. Jensen grabbed the money (which amounted to just over $36), jumped into the taxi, and Springer drove back to the main road. A police officer met Springer at the main road, and a chase ensued. Springer drove the taxi into a snow bank, and the police apprehended both juveniles.

[¶3.] A Stanley County Grand Jury indicted Springer on April 4, 1996, for multiple crimes, including first-degree murder, felony murder, kidnapping, robbery, grand theft, conspiracy, possession of a stolen vehicle, and aiding and abetting some

of the aforementioned crimes. Springer entered into a plea agreement with the State, and on August 12, 1996, the Honorable Max L. Gors held a change of plea hearing, at which the court informed Springer of his statutory and constitutional rights, and the potential minimum and maximum punishments. Springer agreed to cooperate with the police, testify against Jensen, and provide a factual statement of the events surrounding the crimes. In return, the State dropped the other charges, and Springer pleaded guilty to Kidnapping, a Class 1 felony, in violation of SDCL 22-19-1(2) with a maximum potential punishment of life without parole. Both sides were free to recommend any sentence they felt appropriate.

[¶4.]        At the October sentencing hearing,[1] the State and the victim's family advocated for life in prison without parole while Springer's attorneys requested a 30-year sentence. Springer's attorneys argued that Springer was young, could give back to society, cooperated with the State, was smart, contrite, could be rehabilitated, had lacked proper guidance throughout his life, had a poor home life, barely knew his father, and did not have any positive role models. The State argued that Springer had lied in his factual statement, had planned the robbery and murder, failed to prevent the murder, lacked remorse, had a bad juvenile

---

1.    Judge Gors ordered Court Services to prepare a Pre-Sentence Investigation (PSI) report prior to the sentencing hearing. The PSI contained relevant background information about Springer including his age, details of the offense, Springer's version of the offense, Springer's comments regarding the offense, Springer's prior record, his family history, information about Springer's family members, his marital history, education, religion, interests and leisure activities, military service, employment, financial condition, additional comments (which Springer used to apologize and ask for leniency), Springer's future plans, and letters to the court in support of Springer.

record, and his rehabilitation chances were poor. The victim's family members expressed sorrow at the loss of Hare. Springer apologized to the victim's family.

[¶5.] Judge Gors ruled as follows:

> There are a number of factors which I'm going to take into consideration. Some fall on the side of being harsh, and some fall on the side of being lenient. One that falls on the harsh side is the overriding consideration in any sentence like this, is that Michael Hare is dead, and he can't ever come back.
>
> I think it's also clear from the evidence that this terrible crime was planned, and that Mr. Springer had a part in the planning, the robbery part at a minimum.
>
> On the other hand, Mr. Springer did not shoot Mr. Hare. Mr. Springer did plead guilty to [kidnapping]. Mr. Springer did save the time and expense of a trial. Mr. Springer also saved the Hare family one trial to have to go through.
>
> He did testify against Mr. Jensen, whether his testimony was helpful or not, is hard to say. My estimate of the State's case against Paul Jensen was that the State would have won it with or without Mr. Springer's testimony.
>
> And I think that Mr. Springer is at least to all appearances beginning to be contrite in his conduct.
>
> Because of all these factors,[2] I am going to impose a sentence in this case that may be a life sentence, but it may not be. I do think that ultimately there is a possibility of rehabilitation in a person so young. So I'm going to give him a term of years rather than a life sentence without parole.
>
> Accordingly, Mr. Springer, it will be the judgment of the court that you spend 261 years in prison. There to be fed, clothed, and housed at the expense of the State of South Dakota.

---

2. In reference to "these factors," Springer contends that only the factors mentioned by Judge Gors were considered and that they are constitutionally deficient. At the very least, Springer argues "these factors" is ambiguous, and he should be given resentencing. Another possibility is that the factors Judge Gors relied upon were all of the factors, mitigating and aggravating, contained in the PSI and articulated by opposing counsel, Springer, and the victim's family during the course of the sentencing hearing. In addition, Judge Gors had presided over Springer's three day transfer hearing.

> You're under the old system of sentencing parole because your crime was committed prior to July 1st of 1996. 261 years translates to a flat time sentence of 132 years, which I believe is beyond your lifetime, and so in effect this is a life sentence.
>
> But there is also a glimmer of hope down the road, because with your being a first-time offender, you would be eligible for parole, by my calculations, at the conclusion of 33 years. That gives you an opportunity to convince someone in the future that you can be trusted to be back out of prison. I think that the factors that you—that I considered in mitigation of this sentence require that you have that opportunity at some point.

[¶6.] Following Springer's sentencing, the United States Supreme Court decided *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); and *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). *Roper* held that the Eighth and Fourteenth Amendments forbid the imposition of the death penalty on offenders under the age of 18 at the time of their crime. 543 U.S. at 568, 125 S. Ct. at 1194. *Graham* held that the Eighth and Fourteenth Amendments forbid the imposition of life imprisonment without parole on juveniles for nonhomicide crimes. 560 U.S. at 75, 130 S. Ct. at 2030. Lastly, *Miller* merged the two cases and held that the Eighth and Fourteenth Amendments forbid sentencing schemes that mandate life in prison without parole for juvenile offenders. ___ U.S. at ___, 132 S. Ct. at 2469.

[¶7.] On November 23, 2012, Springer filed a pro se motion to correct an illegal sentence alleging that his sentence was unconstitutional under *Roper*, *Graham*, and *Miller*. The State filed a "resistance to motion to correct sentence" on December 14, 2012, and Springer responded by filing "objections of resistance to motion to correct sentence." The Honorable Kathleen Trandahl conducted a hearing

on June 28, 2013, and denied Springer's motion. Judge Trandahl determined that Springer's sentence was not illegal because he had the possibility for parole and Judge Gors had properly considered mitigating factors, including age.[3] The circuit court entered an order denying defendant's motion to correct illegal sentence on June 28, 2013. Springer appeals.

[¶8.]     Springer raises one issue in this appeal:

> Whether the circuit court erred in rejecting Springer's motion to correct illegal sentence.

## STANDARD OF REVIEW

[¶9.]     Springer asserts that he received an illegal sentence. It is clear that an unconstitutional sentence is an illegal sentence. *See State v. Sieler*, 1996 S.D. 114, ¶ 7, 554 N.W.2d 477, 480 (holding that illegal sentences are ones that "exceed the relevant statutory maximum limits or *violate double jeopardy* or are ambiguous or internally contradictory" (emphasis added)); *State v. Tibbetts*, 333 N.W.2d 440, 441 (S.D. 1983) (holding that extra imprisonment in violation of equal protection is illegal in itself); *State v. Lyle*, ___ N.W.2d ___, ___, 2014 WL 3537026 (Iowa 2014) (providing that unconstitutional sentences are illegal sentences in the context of the

---

3.     Judge Trandahl ruled:

> While perhaps [Judge Gors] could have been more thorough or eloquent in setting forth the factors—that I believe the court, subsequent to [Springer's] sentencing, has set forth—the court views the comment that, "you know, there is room for rehabilitation," I think that does take into consideration the fact that you were very young, and that there was a lot of ability for you to move forward from that.
>
> The sentence was well within the statutory scheme as set forth by the legislature, and I do not believe that that was an illegal sentence that you received.

Eighth and Fourteenth Amendments); *State v. Ragland*, 836 N.W.2d 107, 113 (Iowa 2013) (employing a de novo standard of review when the appellant mounted a constitutional attack on an alleged illegal sentence); *State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013) (providing that an appellant may challenge an unconstitutional sentence at any time).  "A court may correct an illegal sentence at any time. . . ." SDCL 23A-31-1.[4]  Accordingly, "[w]e review claims of constitutional violation under the de novo standard of review."  *State v. Mesa*, 2004 S.D. 68, ¶ 9, 681 N.W.2d 84, 86 (citing *State v. Ball*, 2004 S.D. 9, ¶ 19, 675 N.W.2d 192, 198); *see also State v.*

---

4.      SDCL 23A-31-1 provides:

> *A court may correct an illegal sentence at any time* and may correct a sentence imposed in an illegal manner within the time frame provided in this section for the reduction of sentence.  A court may reduce a sentence:
>> (1) Within two years after the sentence is imposed;
>>
>> (2) Within one hundred twenty days after receipt by the court of a remittitur issued upon affirmance of the judgment or dismissal of the appeal; or
>>
>> (3) Within one hundred twenty days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.
>
> whichever is later.  A court may also reduce a sentence upon revocation of probation or suspension of sentence provided by law.  The remedies provided in this section are not a substitute for nor do they affect any remedies incident to post-conviction proceedings.

(Emphasis added.)  We note that the State argues that the statute of limitations has passed.  However, the limitations above apply to sentences imposed in an *illegal manner*, not to sentences that are themselves illegal.  *Id.*  Springer claims that the sentence he received is illegal in and of itself because it violates the Eighth and Fourteenth Amendments.  Put another way, he asserts the sentence that he received exceeds the State's power to punish.  Thus, the sentence would be an illegal sentence and may be corrected at any time.  *Id.*; *see also Tibbetts*, 333 N.W.2d at 441.

#26770

*Berhanu*, 2006 S.D. 94, ¶ 7, 724 N.W.2d 181, 183 (employing the de novo standard of review for a claim of cruel and unusual punishment on direct appeal); *Lyle*, ___ N.W.2d at ___, 2014 WL 3537026; *Ragland*, 836 N.W.2d at 113; *Null*, 836 N.W.2d at 48.

## DECISION

[¶10.]     *Whether the circuit court erred in rejecting Springer's motion to correct illegal sentence.*

[¶11.]     The Eighth Amendment to the United States Constitution forbids the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The South Dakota Constitution also forbids cruel and unusual punishment. S.D. Const. art. VI, § 23. The Eighth Amendment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller*, ___ U.S. at ___, 132 S. Ct. at 2463 (quoting *Roper*, 543 U.S. at 560, 125 S. Ct. at 1183). Embedded in the Eighth Amendment is the concept of "proportionality," which "flows from the basic precept of justice" and mandates that "punishment for a crime should be graduated and proportioned." *Id.* The United States Supreme Court has held that juveniles are categorically "less deserving of the most severe punishments." *Miller*, ___ U.S. at ___, 132 S. Ct. at 2464 (quoting *Graham*, 560 U.S. at 68, 130 S. Ct. at 2026). The United States Supreme Court does not view the Eighth Amendment "through a historical prism[,]" *id.* at ___, 132 S. Ct. at 2463, but rather the Court interprets the Eighth Amendment through the "evolving standards of decency that mark the progress of a maturing society[,]" *id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976)) (internal quotation marks omitted); *see also State v. Berget*, 2013 S.D. 1, ¶ 90, 826 N.W.2d 1, 27-28.

-7-

[¶12.]     As stated above, *Roper* held that the Eighth and Fourteenth Amendments forbid the imposition of the death penalty on offenders under the age of 18 at the time of their crime.  543 U.S. at 568, 125 S. Ct. at 1194.  *Graham* held that the Eighth and Fourteenth Amendments forbid the imposition of life imprisonment without parole on juveniles for nonhomicide crimes.  560 U.S. at 75, 130 S. Ct. at 2030.  *Miller* merged the two cases and held that the Eighth and Fourteenth Amendments forbid sentencing schemes that mandate life in prison without parole for juvenile offenders.  ___ U.S. at ___, 132 S. Ct. at 2469; s*ee also Berget*, 2013 S.D. 1, ¶ 90, 826 N.W.2d at 27-28.

> ### A.  *The impact of* Roper*,* Graham*, and* Miller *on the sentencing of juveniles in South Dakota.*

[¶13.]     *Roper*, *Graham*, and *Miller* evidence "a shift in the nation's moral tolerance" when it comes to sentencing juvenile offenders in adult court.  *Berget*, 2013 S.D. 1, ¶ 90, 826 N.W.2d at 28.  While the United States Supreme Court did not altogether prohibit life sentences without parole in *Miller*,[5] States may no longer impose *mandatory* life sentences on juvenile homicide offenders.  *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469.  The Court held that the imposition of mandatory life sentences on juveniles carried "too great a risk of disproportionate punishment[ ]"

---

5.     The Court maintained, "[G]iven all we have said in *Roper*, *Graham*, and [*Miller*] about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to [life sentences without parole] will be *uncommon*."  *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469 (emphasis added).  Thus, it is possible to sentence a *homicide* juvenile offender to a life sentence after individualized sentencing has taken place, but the Court thought such sentences would be the exception, not the rule.  *Graham* categorically prohibits sentences of life imprisonment for nonhomicide juvenile offenders.  *Graham*, 560 U.S. at 75, 130 S. Ct. at 2030.

forbidden under the Eighth and Fourteenth Amendments. *Id.* Courts around the country must now individually sentence juvenile offenders facing the harshest penalties and consider certain mitigating factors. *See Miller*, ___ U.S. at ___, 132 S. Ct. at 2464-69. Juvenile offenders warrant special consideration because "children have a lack of maturity and an underdeveloped sense of responsibility . . . , are more vulnerable to negative influences and outside pressures . . . , [and] a child's character is not as well formed as an adult's[.]" *Id.* at ___, 132 S. Ct. at 2464 (quoting *Roper*, 543 U.S. at 569-70, 125 S. Ct. at 1183) (internal quotation marks omitted). The United States Supreme Court rested the *Roper*, *Graham*, and *Miller* decisions on science and social science, quoting neurological, psychological, and sociological studies pertaining to children, their culpability, and their decision-making processes. *Id.*

[¶14.]     In 2013, the South Dakota Legislature passed legislation in an effort to comply with *Roper*, *Graham*, and *Miller*. 2013 S.D. Sess. Laws ch. 105, §§ 1-5. Specifically, the Legislature changed SDCL 22-6-1 to authorize, but not mandate, a life sentence without parole for a juvenile offender if he was convicted of a Class A or B felony. *Id.* The Legislature also amended SDCL 23A-27-1 to allow a juvenile to "present any information in mitigation of punishment[ ]" at their sentencing hearings. *Id.* We conclude that those statutory changes comply with *Roper*, *Graham*, and *Miller*. Sentencing courts must consider what the United States Supreme Court termed the "mitigating qualities of youth." *Miller*, ___ U.S. at ___, 132 S. Ct. at 2467. These factors include: (1) the chronological age of the juvenile, (2) the juvenile's immaturity, impetuosity, irresponsibility, and recklessness, (3)

family and home environment, (4) incompetency in dealing with law enforcement and the adult criminal justice system, (5) the circumstances of the crime, and, most importantly, (6) the possibility for rehabilitation. *See id.* at ___, 132 S. Ct. at 2467-69. The United States Supreme Court has recognized that a juvenile's "traits are 'less fixed' and his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* at ___, 132 S. Ct. at 2464 (alterations in original) (quoting *Roper*, 543 U.S. at 570, 125 S. Ct. at 1183). While a juvenile defendant may present any mitigating evidence at his sentencing hearing, the sentencing court should carefully weigh and consider the above mitigating qualities of youth. We now analyze whether *Roper*, *Graham*, and *Miller* apply to Springer's case.

> B. *Whether Springer received a life sentence without the possibility of parole.*

[¶15.]        *Graham* and *Miller* apply to sentences of life without parole. *See Graham*, 560 U.S. at 75, 130 S. Ct. at 2030; *Miller*, ___ U.S. at ___, 132 S. Ct. at 2469. In order for Springer to obtain resentencing under *Graham* and *Miller*, he must establish that: (1) he received a sentence of life without parole and (2) the holdings of *Graham* and *Miller* apply retroactively. Neither *Graham* nor *Miller* explicitly held that they apply to the functional equivalent of life without parole (i.e. "de facto" life sentences) or apply retroactively. *See Graham*, 560 U.S. 48, 130 S. Ct. 2033; *Miller*, ___ U.S. ___, 132 S. Ct. 2469; *Ragland*, 836 N.W.2d at 114. Springer argues, however, that *Graham* and *Miller* apply to sentences that are de facto life sentences and that he received a de facto life sentence. In addition, for *Graham* and *Miller* to apply in Springer's case, their holdings must be made to apply retroactively because Springer's conviction is final. Therefore, before we can

consider whether or not Springer received an illegal sentence, he must show that he meets both of the conditions.

[¶16.]     Our analysis begins by observing that Springer did not receive a mandatory life sentence without the possibility for parole; he received a 261-year term-of-years sentence with the possibility for parole after he serves 33 years of his sentence.  He will be 49 years old when he is eligible for parole.  *Miller* applies to offenders who receive *mandatory sentences of life without parole.*  ___ U.S. at ___, 132 S. Ct. at 2469.  Springer pleaded guilty to Kidnapping, a Class 1 felony in 1996, in violation of SDCL 22-19-1(2) with a maximum *potential* punishment of life without parole.  As noted above, Springer received a lengthy term-of-years sentence and, at his sentencing hearing, the parties were free to advocate for whatever sentence they felt appropriate.  Life without parole was a sentencing option for kidnapping, but our sentencing scheme in 1996 did not require a mandatory sentence of life without parole for a kidnapping conviction.  SDCL 22-19-1(2) (1996) (current version at SDCL 22-19-1(2) (2013)); SDCL 22-6-1(3) (1996) (current version at SDCL 22-6-1(3) (2013)).  *Graham* held that the Eighth and Fourteenth Amendments forbid the imposition of *life imprisonment without parole* on juveniles in nonhomicide cases.  560 U.S. at 75, 130 S. Ct. at 2030.  Again, Springer did not receive a sentence of life in prison without the possibility for parole, so even if we were to apply *Graham* and *Miller* retroactively, it does not appear that these cases would affect to Springer's sentence.

> i.   *Whether Springer received a de facto life sentence because Judge Gors referred to the sentence as a life sentence.*

[¶17.]       Springer concedes that he did not receive a life sentence without parole.  He contends, however, that *Graham* and *Miller* apply to term-of-years sentences that are the functional equivalent of life without parole.  In support, Springer points out that Judge Gors twice referred to Springer's sentence as a "life sentence."  According to Springer, Judge Gors in essence made his sentence a de facto life sentence because he called it a life sentence and 261 years is well beyond Springer's natural life span.  Springer also directs us to *State v. Semrad*, where we held that parole eligibility estimates are not part of the defendant's sentence because the power to parole is an executive act, not a judicial one.  2011 S.D. 7, ¶¶ 7-8, 794 N.W.2d 760, 763-64.  Therefore, because Judge Gors referred to Springer's sentence as a life sentence and the parole eligibility estimate was not part of his sentence, Springer maintains that his 261-year sentence was a de facto life sentence.

[¶18.]       The State argues that Springer clearly did not receive a sentence of life without parole or its functional equivalent because he was sentenced to a term of years with the possibility of parole in 2029 when he is 49 years old.  Springer's sentence did not violate the statutory scheme at the time.  Plus, Springer took the benefit of a plea bargain.  The State also points out that there is a split of authority as to whether *Graham* and *Miller* even apply to de facto life sentences or life sentences with the opportunity for parole.  The State urges us to join other jurisdictions that have held that *Graham* and *Miller* do not extend to de facto life sentences or life sentences with the opportunity for parole.  *See State v. Vang*, 847 N.W.2d 248, 262-63 (Minn. 2014) (holding *Miller* inapplicable to a life sentence with

the possibility of parole in 30 years); *State v. Williams*, 842 N.W.2d 536 (Wis. Ct. App. 2014) (per curiam) (holding *Graham* inapplicable to homicide cases and *Miller* only applicable to sentences of mandatory life without parole); *Bunch v. Smith*, 685 F.3d 546, 551-53 (6th Cir. 2012) (holding *Graham* inapplicable to term-of-years sentences and declaring that if the United States Supreme Court wishes to expand its holding, it must do so explicitly); *Ellmaker v. State*, 329 P.3d 1253 (Kan. Ct. App. 2014) (per curiam) (holding that *Miller* does not apply to a mandatory 50-year sentence because it is not the functional equivalent of life without parole); *Adams v. State*, 707 S.E.2d 359, 365 (Ga. 2011) (holding *Graham* inapplicable to term-of-years sentences); *State v. Brown*, 118 So. 3d 332 (La. 2013) (declining to extend *Miller* to lengthy term-of-years sentences); *State v. Kasic*, 265 P.3d 410, 414-15 (Ariz. Ct. App. 2011) (holding *Graham* inapplicable to term-of-years sentences).

[¶19.]	We find Springer's first argument as to whether he received a de facto life sentence to be without merit. We place little weight on the fact that Judge Gors referred to Springer's sentence as a life sentence. Judge Gors was merely acknowledging the possibility that Springer could spend the rest of his life in prison should he fail to make parole. Indeed, the first time Judge Gors used the term "life sentence" he stated, "I am going to impose a sentence in this case that *may be* a life sentence, *but it may not be.*" (Emphasis added). It is undisputed that Springer received a term-of-years sentence with the possibility for parole at age 49. We said in *State v. Munk*, "It is general settled law in this state that the oral sentence is the only sentence and the written sentence must conform to it." 453 N.W.2d 124, 125 (S.D. 1990); *State v. Thayer*, 2006 S.D. 40, ¶ 8, 713 N.W.2d 608, 612. If the oral

sentence is ambiguous, we then look to the written sentence for clarification. *Munk*, 453 N.W.2d at 125. Springer does not argue, and we do not conclude, that the oral sentence is ambiguous; but even if it were, the written sentence clarifies that Springer received 261 years in prison with parole eligibility in 33 years. Therefore, the words Judge Gors used did not make Springer's sentence a de facto life sentence. Consequently, Springer's first argument fails.

### ii. Whether Springer fits under Caballero's rationale.

[¶20.]     Springer next contends that he received a de facto life sentence because his case is similar to *People v. Caballero*, 282 P.3d 291 (Cal. 2012). In *Caballero*, a California Supreme Court case, a juvenile offender received consecutive sentences that would not allow him the opportunity for parole for over 100 years. *Id.* at 295. The California Court concluded "that sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside of the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Id.* Under *Caballero's* reasoning, a de facto life sentence is one where the defendant's parole eligibility date falls outside of the defendant's life expectancy. *See id.* Springer, however, did not offer any evidence of his life expectancy or that his parole eligibility date in 2029 falls outside of his life expectancy. Thus, Springer does not fall under *Caballero's* reasoning.

### iii. Whether Springer fits under Ragland's rationale.

[¶21.]     Springer next argues that his situation is similar to Jeffrey Ragland, an Iowa juvenile offender. Ragland received a mandatory sentence of life without

parole after being convicted of first-degree murder under Iowa's felony-murder doctrine. *Ragland*, 836 N.W.2d at 110. After the United States Supreme Court decided *Miller* in 2012, the Governor of Iowa commuted all juvenile, mandatory sentences of life without parole to term-of-years sentences in order to comply with *Miller's* mandates. *Id.* at 111-12. Instead of life without parole, the Governor of Iowa commuted Ragland's sentence to a term of 60 years, at which time he would be eligible for release. *Id.* This meant that Ragland would be eligible for release at 78 years of age; his life expectancy was 78.6 years. *Id.* at 119. The Iowa Supreme Court held that *Miller* applies "not only to mandatory life sentences without parole, but also to the *practical equivalent* of life-without-parole sentences." *Id.* (emphasis added). The Iowa Supreme Court reasoned:

> Oftentimes, it is important that the spirit of the law not be lost in the application of the law. This is one such time. The spirit of the constitutional mandates of *Miller* and *Graham* instruct that much more is at stake in the sentencing of juveniles than merely making sure that parole is possible. In light of our increased understanding of the decision making of youths, the sentencing process must be tailored to account in a meaningful way for the attributes of juveniles that are distinct from adult conduct. At the core of all this also lies the profound sense of what a person loses by beginning to serve a lifetime of incarceration as a youth.

> In the end, a government system that resolves disputes could hardly call itself a system of justice with a rule that demands individualized sentencing considerations common to all youths apply only to those youths facing a sentence of life with no parole until age seventy-eight. Accordingly, we hold *Miller* applies to sentences that are the functional equivalent of life without parole.

*Id.* at 121-22. Springer insists that he received the functional equivalent of life without parole because he will not have the opportunity to obtain release until an

advanced age, similar to Ragland, and that the spirit and principles of *Graham* and *Miller* require resentencing.

[¶22.] Springer's reliance on *Ragland* is misplaced. The defendant in *Ragland* first received a mandatory sentence of life without parole, which was subsequently commuted to a term of years. *Id.* at 111-12. Springer never received a mandatory sentence of life without parole. Ragland's life expectancy was 78.6 years, and he would not have a chance to obtain release until 78. *Id.* at 119-21. Springer did not submit any evidence of his life expectancy and has the opportunity to obtain release when he is 49. Because Springer submitted no evidence regarding his life expectancy, we have no basis to conclude that Springer's life expectancy is approximately equal to his parole date. Therefore, Springer's sentence differs significantly from Ragland's and he does not fit under *Ragland's* rationale.

### iv. Whether Springer is nonetheless being denied a meaningful opportunity for release.

[¶23.] Lastly, Springer contends that he is nonetheless being denied a meaningful opportunity for release under *Graham* and, therefore, received a de facto life sentence. *Graham* requires that juvenile offenders have a "*meaningful opportunity* to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75, 130 S. Ct. at 2030 (emphasis added). The United States Supreme Court concluded in *Graham,* "A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some *realistic* opportunity to obtain release before the end of that term." 560 U.S. at 82, 130 S. Ct. at 2034 (emphasis added). Thus, a meaningful opportunity is a realistic one. *Id.*

[¶24.]     The United States Supreme Court determined that the appellant in *Graham* did not have a realistic or meaningful opportunity to obtain release because Florida had abolished its parole system, meaning Graham's only opportunity for release would be executive clemency. *Id.* at 57, 130 S. Ct. at 2020. The Court reasoned that the possibility for clemency was too remote and did "not mitigate the harshness of the sentence." *Id.* at 70, 130 S. Ct. at 2027 (citing *Solem v. Helm*, 463 U.S. 227, 300-01, 103 S. Ct. 3001, 3015, 77 L. Ed. 2d 637 (1983)). Springer, on the other hand, has the opportunity for parole at age 49.[6] He is not completely dependent on clemency like Graham. Additionally, Judge Gors specifically considered Springer's chances for rehabilitation and release. Judge Gors commented, "I do think that ultimately there is a possibility of rehabilitation in a person so young." He also stated that there was a "glimmer of hope down the road" wherein Springer would have "an opportunity to convince someone in the future that [he] can be trusted to be back out of prison." *Graham* does not require that a juvenile eventually make parole, but rather that he have a meaningful

---

6.     Springer urges yet another reason why his sentence should be construed as a de facto life sentence. He reasons that under South Dakota's old parole system, parole was discretionary. SDCL 23A-27-45, *repealed by* 2011 S.D. Sess. Laws ch. 125, § 1; *see also* SDCL 24-15A-1. New-system inmates are entitled to parole as a matter of right. SDCL 24-15A-38. Springer contends that discretionary parole is not a "meaningful opportunity to obtain release," but he fails to explain how or why discretionary parole is not meaningful. In fact, if Judge Gors had given the same 261-year sentence today, under current parole tables Springer would not be eligible for release until he is 62 years old (i.e. parole eligibility after serving 45 years). Absent any reasoning in support of his contention, we find no merit to Springer's argument. *Graham*, to the contrary, held, "A State need not guarantee the offender eventual release," which suggests that discretionary parole is meaningful. 560 U.S. at 82, 130 S. Ct. at 2034.

(realistic) chance to obtain release. 560 U.S. at 82, 130 S. Ct. at 2034. Judge Gors contemplated such an opportunity when he sentenced Springer.

[¶25.] It is clear that Springer did not receive a de facto life sentence under any rule or rationale he posits. Springer cannot establish that he received the functional equivalent of life without parole under either *Caballero's* or *Ragland's* rationale. Accordingly, we decline to adopt either California's or Iowa's rule at this time. Springer does not provide any case law supporting his position that a term-of-years sentence with parole eligibility in a defendant's 40s or 50s constitutes a de facto life sentence. Springer does not cite any Eighth or Fourteenth Amendment case law holding that a defendant who is eligible for parole in either his 40s or 50s is being denied a "meaningful opportunity to obtain release."[7] Because Springer cannot establish a rule for what constitutes a de facto life sentence under which he is entitled to relief, we also decline to craft our own rule. In declining to adopt or

---

7. Springer heavily relied on *State v. Pearson*, another Iowa Supreme Court case, at oral argument. 836 N.W.2d 88 (Iowa 2013). The court reversed and remanded Pearson's 50-year sentence with parole eligibility after 35 years because, inter alia, the trial court did not properly "consider[ ] rehabilitation as a factor in sentencing Pearson." *Id.* at 97. The court extended *Graham* and *Miller's* rationale and fashioned a narrow holding: "[W]e think a minimum of thirty-five years *without the possibility for parole* for the crimes [of burglary and robbery] violate[ ] the core teachings of *Miller*." *Id.* at 96. Springer argues that this Court should rely on *Pearson* and remand his case for new sentencing. However, *Pearson* is not binding authority on this Court, it was a 4-3 decision, and it was on direct appeal at the time, whereas Springer's conviction is final. In addition, the dissent in *Pearson* states, "[N]o other appellate court has adopted the majority's reading of [*Graham* and *Miller*]. The Iowa Supreme Court stands alone." *Id.* at 103 (Mansfield, J., dissenting). Finally, we distinguish *Pearson* on the grounds that it was not an Eighth Amendment case; the Iowa Supreme Court interpreted Iowa Const. art. I, § 17 to require an individualized sentencing hearing in juvenile cases like *Pearson*. *Id.* at 96. We decline to adopt such an expansive reading of *Graham* and *Miller*.

craft such a rule, we further decline the invitation to join jurisdictions holding *Roper*, *Graham*, and *Miller* applicable or inapplicable to de facto life sentences. Springer did not receive life without parole or a de facto life sentence because he has the opportunity for release at age 49.[8]

        *C. Whether* Roper*,* Graham*, and* Miller *apply retroactively.*

[¶26.]      Springer is unable to establish that he received a sentence of life without parole (or a de facto life sentence) for *Roper*, *Graham*, and *Miller* to apply to him. Because he cannot establish that he received the type of sentence required for *Roper*, *Graham*, and *Miller* to apply to him, we need not decide today whether those three cases might apply retroactively. Therefore, we will not analyze Springer's other arguments under *Roper*, *Graham*, and *Miller* regarding individualized sentencing.

**CONCLUSION**

[¶27.]      Accordingly, Springer did not receive an illegal sentence and is ineligible for resentencing. We affirm.

[¶28.]      GILBERTSON, Chief Justice, and KONENKAMP and SEVERSON, Justices, and ROEHR, Circuit Court Judge, concur.

[¶29.]      ROEHR, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

---

8.    We are not implying that a lengthy term-of-years sentence, like the 261-year sentence here, can never be a de facto life sentence. We emphasize that Springer's parole eligibility at age 49 prevents us from concluding that he received a de facto life sentence. Springer has a meaningful opportunity to obtain release.