#27917-a-DG
**2017 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

PAUL DEAN JENSEN,                              Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
STANLEY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                              Attorneys for plaintiff
                                                          and appellee.


JEFF LARSON
Jeff Larson Law, LLP
Sioux Falls, South Dakota                      Attorneys for defendant
                                                          and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 22, 2017
OPINION FILED **04/19/17**

#27917

GILBERTSON, Chief Justice

[¶1.]        In 1996, Paul Dean Jensen received concurrent, mandatory life

sentences for the first-degree murder and kidnapping of Michael Hare.  Jensen was

14 years old when he committed the offenses.  In 2012, the United States Supreme

Court issued *Miller v. Alabama*, barring mandatory life sentences against juvenile

homicide offenders.  567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).  Jensen

filed a motion in circuit court to have his sentence corrected.  After the United

States Supreme Court issued *Montgomery v. Louisiana*, which declared that *Miller*

applies retroactively, the court held a resentencing hearing.  *See* ___ U.S.___, 136 S.

Ct. 718, 193 L. Ed. 2d 599 (2016).  At the conclusion of the hearing, the sentencing

court resentenced Jensen to concurrent, 200-year sentences for first-degree murder

and kidnapping.  Jensen appeals.  We affirm

## Background

[¶2.]        On January 14, 1996, 14-year-old Jensen and 16-year-old Shawn

Springer carried out their plan to rob a taxi driver in Pierre, South Dakota.  Armed

with a gun and fitted with bandanas to cover their faces, Jensen and Springer

called for a taxi to pick them up in the back parking lot of a local hotel.  The taxi

company dispatched driver Michael Hare to the hotel.  Hare parked and waited in

the front parking lot, just outside the hotel's entrance.  Jensen and Springer

realized that the taxi was not going to pick them up in the rear parking lot and

decided that they could not keep their faces covered with bandanas if they entered

the taxi in front of the hotel.  Jensen and Springer uncovered their faces, entered

the taxi, and directed Hare to drive them to Fort Pierre.

[¶3.]        Shortly thereafter, Hare stopped the taxi on a gravel road outside Fort Pierre. Jensen pointed a gun at Hare, and Springer and Jensen demanded that Hare give them all his money. Hare insisted that he only had $30 and gave the money to Jensen and Springer. Jensen got out of the taxi with the gun drawn and ordered Hare to exit the vehicle. Hare begged for his life. Jensen shot Hare three times and walked back toward the taxi. Jensen grabbed Hare's billfold, which had been placed on the hood of the taxi. Jensen got into the passenger's seat, and Springer, who had already relocated to the driver's seat, began to drive away. Law enforcement learned of the robbery while Jensen and Springer were leaving the scene and located the taxi being driven by Springer. A high-speed chase ensued but ended when Springer drove the taxi into a snowbank. The officers arrested Jensen and Springer.

[¶4.]        In August 1996, Springer pleaded guilty to kidnapping and agreed to testify against Jensen. The sentencing court sentenced Springer to 261 years in prison. Jensen, after being transferred to adult court, pleaded not guilty. On October 4, 1996, a jury found Jensen guilty of first-degree murder, two counts of first-degree felony murder, first-degree robbery, aiding and abetting grand theft, possession of a stolen motor vehicle, kidnapping, and conspiracy to commit first-degree robbery. Only his convictions for first-degree murder and kidnapping are relevant in this appeal. For those convictions, the sentencing court imposed concurrent sentences of mandatory life in prison. We affirmed Jensen's convictions and sentences in *State v. Jensen*, 1998 S.D. 52, 579 N.W.2d 613.

[¶5.]        After the United States Supreme Court issued *Miller*, 567 U.S. 460, 132 S. Ct. 2455, Jensen filed a motion to correct an illegal sentence. The circuit court granted Jensen's motion and held a resentencing hearing on June 2-3, 2016. At the hearing, both the State and Jensen presented expert testimony on the mitigating qualities of Jensen's youth, namely evidence related to Jensen's childhood and Jensen's emotional, social, psychological, and intellectual attributes as a juvenile offender. The parties also presented expert testimony on Jensen's changed, matured character as an adult. The State presented evidence regarding Jensen's potential for release under the parole system in effect at the time of his crimes, referred to as the "old system." The current parole system provides presumptive release to offenders; the old system used a discretionary system. The State's witnesses described the old parole system and explained what factors the parole board would typically consider before releasing a prisoner into the community.

[¶6.]        At the conclusion of the resentencing hearing, the court orally sentenced Jensen to 200 years in prison for both first-degree murder and kidnapping and ordered the sentences to run concurrently. Jensen would be eligible for discretionary parole at age 39 and for parole based on good-time credit at age 116.

[¶7.]        Jensen appeals, asserting the following issues:

1. Whether concurrent, 200-year sentences constitute cruel and unusual punishment?

2. Whether the sentencing court abused its discretion when it imposed concurrent, 200-year sentences?

## Analysis

### 1. Whether concurrent, 200-year sentences constitute cruel and unusual punishment?

[¶8.] Before we examine this issue, we address the State's claim that Jensen waived his right to challenge the length of his sentence under the Eighth Amendment. The State claims that Jensen waived this right because he did not object when the court sentenced him or file a motion to have the court reconsider its sentence. Although we ordinarily decline to review an error not raised before the circuit court, Jensen challenges the legality of the sentencing court's decision to impose concurrent, 200-year sentences under the Eighth Amendment, not the court's procedural or evidentiary decisions related to its sentencing. Whether the court imposed an illegal sentence in violation of the Eighth Amendment is preserved for our review. *See* SDCL 23A-31-1 (Rule 35) ("A court may correct an illegal sentence at any time[.]"); *State v. Springer*, 2014 S.D. 80, ¶ 9, 856 N.W.2d 460, 463 ("[A]n unconstitutional sentence is an illegal sentence.").

[¶9.] We review de novo whether a defendant's sentence is cruel and unusual in violation of the Eighth Amendment. *Springer*, 2014 S.D. 80, ¶ 9, 856 N.W.2d at 464. In regard to juveniles, the United States Supreme Court has held that the Eighth Amendment forbids the imposition of the death penalty for any crime, a sentence of life without parole for nonhomicide crimes, and a sentence of mandatory life without parole for homicide crimes. *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (barring the imposition of the death penalty); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (barring sentences of life without parole against juvenile nonhomicide offenders);

*Miller*, 567 U.S. 460, 132 S. Ct. 2455 (barring sentencing schemes that mandate life without parole for juvenile homicide offenders). In *Springer*, we recognized that our Legislature amended SDCL 22-6-1 and SDCL 23A-27-1 (Rule 32(a)(1)) in response to *Roper*, *Graham*, and *Miller*. *Springer*, 2014 S.D. 80, ¶ 14, 856 N.W.2d at 465. SDCL 22-6-1 no longer mandates a life sentence without parole for a juvenile offender convicted of a Class A or B felony. And the Legislature amended Rule 32(a)(1) to allow a juvenile "to present any information in mitigation of punishment." In light of *Miller* and the statutory changes, we concluded that "the sentencing court should carefully weigh and consider the [ ] mitigating qualities of youth" as set out in *Miller*. *Springer*, 2014 S.D. 80, ¶ 14, 856 N.W.2d at 466.

[¶10.]		Jensen acknowledges that the sentencing court considered the *Miller* factors and notes that in many respects, the court correctly applied *Miller*. But he argues that the sentencing court "made some statements that seem to stray from *Miller's* guidance," which, to Jensen, renders his sentence unconstitutional. In particular, Jensen quotes the court's statement: "Youth simply isn't an excuse or a way to excuse a criminal offense." Jensen contends the opposite is true—his youth makes him constitutionally different than an adult—and that the court's statement makes clear that the court did not adequately account for Jensen's youth.

[¶11.]		Jensen is correct that "[s]entencing courts must consider what the United States Supreme Court termed the 'mitigating qualities of youth.'" *Id.* ¶ 14, 856 N.W.2d at 465 (quoting *Miller*, 567 U.S. at ____, 132 S. Ct. at 2467); *accord State v. Charles*, 2017 S.D. 10, ¶ 19, ____ N.W.2d ____. Those qualities include:

> (1) the chronological age of the juvenile, (2) the juvenile's immaturity, impetuosity, irresponsibility, and recklessness, (3)

family and home environment, (4) incompetency in dealing with law enforcement and the adult criminal justice system, (5) the circumstances of the crime, and, most importantly, (6) the possibility for rehabilitation.

*Springer*, 2014 S.D. 80, ¶ 14, 856 N.W.2d at 465-66 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2467-69).

[¶12.]    But from our review of the sentencing court's decision, the court did not stray from its duty to weigh and consider the *Miller* factors. The court specifically took into account Jensen's youth at the time of the offenses. The court identified that both Springer and Jensen "were young men of an age that the courts have said now that we need to look at that age of minority and take that into account as mitigation in terms of sentencing the individuals." The court found that Jensen matured—he was not the same person he was when he was convicted. From the evidence presented, the court concluded that multiple factors weighed in favor of Jensen's potential for rehabilitation and that the 20 years served by Jensen amounted to sufficient retribution. But the court concluded that Jensen "has a great deal yet that he needs to accomplish and to prove that he can function in society as a positive member of society" and imposed a sentence to a lengthy term of years with a possibility of release at age 39.

[¶13.]    Nevertheless, Jensen claims that his sentence is unconstitutional under the Eighth Amendment because it is the functional equivalent of life without parole. He recognizes that he is eligible for discretionary release at age 39, but argues that *discretionary* release under South Dakota's old parole system does not comport with *Miller*. He distinguishes his case from *State v. Diaz*, in which we remarked that Diaz did not receive a life sentence because she had the opportunity

for parole at age 55. 2016 S.D. 78, ¶ 58, 887 N.W.2d 751, 768. Diaz, unlike Jensen, was sentenced under the new parole system, which means she will be released at age 55 without having to appear before the parole board so long as she is compliant while in prison. Under the old parole system, Jensen could remain in prison until his presumptive release date at age 116 (well beyond his natural life), if the parole board denies Jensen release at each opportunity after he turns 39. Jensen cites to *Atwell v. State* for the proposition that "[a] presumptive parole release date set decades beyond a natural life span is at odds with the Supreme Court's recent pronouncement in *Montgomery*." 197 So. 3d 1040, 1048 (Fla. 2016).

[¶14.]    In 1992, Atwell was convicted of first-degree murder and armed robbery. *Id.* at 1043. He was 16 years old when he committed the offenses. On the murder conviction, the statute in effect mandated a sentence of life without the possibility of parole for 25 years. *Id.* Following *Miller*, Atwell petitioned for post-conviction relief, arguing that his mandatory sentence violated the Eighth Amendment. *Id.* at 1044. The Florida district court denied relief because it held that Atwell's possibility of parole after serving 25 years removed his mandatorily-imposed sentence from the purview of *Miller*.

[¶15.]    On appeal, the Florida Supreme Court reversed. It found significant that when the court sentenced Atwell in 1992, the court was not able to consider how juveniles "are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 1050 (quoting *Miller*, 567 U.S. at ___, 132 S. Ct. at 2469). And, even though Atwell would have an opportunity to have his sentence re-examined after serving 25 years, the Florida court highlighted

that the parole system in effect at the time did not require the parole board to consider the *Miller* factors, which meant that Atwell would never have his juvenile-related characteristics considered when imposing punishment. *Id.* at 1047 (quoting Fla. Stat. § 947.002 (2015)). The court also rejected the claim that Atwell's right to presumptive release after serving 140 years brought Atwell's *mandatorily-imposed* sentence into compliance with *Miller*. Atwell had yet to have his juvenile-related characteristics considered in regard to his punishment and release after serving 140 years was beyond Atwell's natural life. *Id.* at 1048. Ultimately, the court ordered that Atwell be resentenced so he could "receive the type of individualized sentencing consideration *Miller* requires." *Id.* at 1050.

[¶16.] Here, however, Jensen received the type of individualized sentencing required by *Miller* when the sentencing court held a resentencing hearing in 2016. Also, although South Dakota's discretionary parole system, like Florida's, does not require the consideration of the mitigating qualities of youth, the *Atwell* court examined Florida's discretionary parole system to determine whether Atwell's opportunity for parole could remove his *mandatorily-imposed* sentence from the purview of *Miller* and *Montgomery*. Jensen did not receive a mandatory sentence of life without the possibility of parole. And Jensen directs us to no case in which this Court or the United States Supreme Court has held that—when a juvenile receives individualized sentencing mandated by *Miller* and has an opportunity for release— the Eighth Amendment also requires that a parole board consider the juvenile homicide offender's youth-related characteristics.

[¶17.] In response, Jensen cites to legislation from other states requiring parole boards to apply the *Miller* factors at parole hearings for juvenile offenders. *See* Conn. Gen. Stat. § 54-125a(f)(4); Cal. Penal Code § 4801(c); W. Va. Code § 62-12-13b(a), (b). He then claims that because South Dakota has no similar provisions, the sentencing court unconstitutionally vested full authority to the parole board to decide whether Jensen in fact receives a life sentence without parole. Jensen recognizes that *Miller* does not preclude a life sentence without the possibility of parole. But in his view, the harshest penalties must be reserved for the most severe criminals, and, here, the sentencing court did not consider him to be the "worst of the worst."

[¶18.] Although many states have reformed their laws in response to *Miller* and *Montgomery*, it is not this Court's role to judicially legislate the parole process. The intersection of the parole process and imprisoned juvenile offenders in South Dakota is an issue best left to be examined by the Legislature. The issue is significant indeed. But here, the absence of legislation mandating that our parole board consider the *Miller* factors does not render Jensen's concurrent, 200-year sentences unconstitutional under the Eighth Amendment. Jensen received a discretionary sentence to a lengthy term of years following an individualized sentencing that considered the mitigating qualities of youth and Jensen's prospects for rehabilitation as required by *Miller*. *See Charles,* 2017 S.D. 10, ¶ 20, ___ N.W.2d at ____ (court imposed discretionary sentence to a lengthy term of years after considering the *Miller* factors); *Diaz,* 2016 S.D. 78, ¶ 45, 887 N.W.2d at 764

(same). Therefore, Jensen has not established that his sentence is cruel and

unusual in violation of the Eighth Amendment.

### 2. Whether the sentencing court abused its discretion when it imposed concurrent, 200-year sentences?

[¶19.]     Jensen asserts that the sentencing court abused its discretion because

it abdicated its sentencing discretion to the parole board. He directs this Court to

the sentencing court's statement that it was not as equipped as the parole board to

decide when to release Jensen. He also highlights that the court's concurrent, 200-

year sentences and Jensen's good-time release (presumptive release) at age 116

prove that the sentencing court left the decision whether Jensen actually serves a

life sentence up to the parole board.

[¶20.]     The State responds that Jensen waived the issue because Jensen did

not object at sentencing, arguing that the court abdicated its duties to the parole

board when the court imposed its sentence. During the resentencing hearing, the

court heard evidence and testimony concerning the difference between the old and

new parole systems. At the conclusion of the hearing, Jensen specifically requested

that the court consider the difference between the old and new parole systems and

not compare Jensen's sentence to that of juveniles sentenced under the new system.

Jensen argued that unlike the more-recently sentenced juveniles, he "will always

have to do that next step of justifying it [his release] to the parole board." From our

review, Jensen did not waive his right to have this Court review his claim.

[¶21.]     A sentencing court has broad discretion when fashioning an

appropriate sentence. The court must "acquire a thorough acquaintance with the

character and history of the [person] before it." *State v. Lemley*, 1996 S.D. 91, ¶ 12,

552 N.W.2d 409, 412 (quoting *State v. Chase in Winter*, 534 N.W.2d 350, 354-55 (S.D. 1995)). "This includes the circumstances of the offense 'together with the character and propensities of the offender.'" *State v. Anderson*, 1996 S.D. 46, ¶ 32, 546 N.W.2d 395, 403 (quoting *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S. Ct. 2909, 2932, 49 L. Ed. 2d 859 (1976)). When sentencing a juvenile offender, sentencing courts must also "consider what the United States Supreme Court termed the 'mitigating qualities of youth.'" *Springer*, 2014 S.D. 80, ¶ 14, 856 N.W.2d at 465 (quoting *Miller*, 567 U.S. at ____, 132 S. Ct. at 2467).

[¶22.]     From our review of the court's oral sentence, it did not abdicate its sentencing duties to the parole board. Yes, the court referred to the parole process during its oral sentence. The court said:

> Looking at this, this is somewhat unique. I was thinking there's not very many people that are sentenced to the penitentiary for any period of time that have an opportunity to come back before the [c]ourt after a period of, a significant period of time beyond the two years that's available and really have a full-blown resentencing hearing.
>
> As I said, I thought that was unique and then I got to thinking a little more about that. Actually, that's what our parole system is. Maybe this [c]ourt doesn't sit as a parole board. The [c]ourt probably isn't well equipped to perform that function.

But the court did not leave for the parole board to decide Jensen's sentence. The court imposed concurrent, 200-year sentences against Jensen for murder and kidnapping after weighing and considering all the evidence presented, the mitigating qualities of youth, the circumstances of Jensen's crime, and Jensen's prospects for rehabilitation. The evidence presented includes extensive testimony about Jensen's childhood, multiple expert opinions on Jensen's mental health as a

juvenile and as an adult, evidence and testimony about Jensen's maturity and behavior while incarcerated, and testimony concerning what factors the parole board would typically consider when deciding to exercise discretionary release. Because the sentencing court acquired a thorough acquaintance with Jensen's character and history, considered the mitigating qualities of youth, and considered Jensen's prospects for rehabilitation, it did not abdicate its sentencing responsibilities. *See Lemley*, 1996 S.D. 91, ¶ 12, 552 N.W.2d at 412; *Charles*, 2017 S.D. 10, ¶ 20, ___ N.W.2d at ____.

[¶23.]     Affirmed.

[¶24.]     SEVERSON, and WILBUR, Justices, and BROWN, Matthew, and SOGN, Circuit Court Judges, concur.

[¶25.]     BROWN, Matthew, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶26.]     SOGN, Circuit Court Judge, sitting for KERN, Justice, disqualified.