# Supreme Court of Louisiana

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**BY CLARK, J.**:

2015-KH-0100      STATE EX REL. ALDEN MORGAN v. STATE OF LOUISIANA (Parish of
                  Orleans)

                  For the reasons expressed herein, we hold the categorical rule in
                  Graham applies to the defendant's 99-year sentence without parole
                  insofar as it is the functional equivalent of a life sentence and
                  denies him a meaningful opportunity for release, to which he is
                  entitled.  Because it is an effective life sentence, it is
                  rendered illegal pursuant to Graham and can be corrected at any
                  time under La. C. Cr. P. art. 882.  We order the deletion of the
                  defendant's parole ineligibility and order that he be designated
                  as parole-eligible in accordance with La. R.S. 15:574.4(D). As
                  noted above, we are not ordering the defendant's immediate
                  release, nor or we guaranteeing his eventual release.  Rather,
                  the defendant's access to the Board's consideration for parole
                  will satisfy the mandate of Graham." Shaffer, 77 So.3d at 943.
                  All other claims raised are procedurally barred under well-
                  settled law.  La. C.Cr.P. art. 930.3 provides no basis for post-
                  conviction claims of trial court sentencing error. Melinie,
                  supra.
                  AFFIRMED WITH INSTRUCTIONS.

                  JOHNSON, C.J., additionally concurs and will assign reasons.
                  CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2015-KH-0100

STATE EX REL. ALDEN MORGAN

VERSUS

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

**CLARK, J.**

A jury found the defendant, Alden Morgan, committed the offense of armed robbery at age 17. Following return of the guilty verdict, the district court sentenced him to 99 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. After being denied relief on direct review, the defendant filed a motion to correct an illegal sentence in light of recent developments in Eighth Amendment jurisprudence pertaining to the sentencing of juveniles. Specifically, the defendant relied on *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed. 2d 825 (2010), wherein the United States Supreme Court concluded that a sentence of life without the possibility of parole for a nonhomicide offense committed when the defendant was a juvenile constitutes cruel and unusual punishment. We granted the defendant's writ application to determine whether the defendant's 99-year sentence is an effective life sentence and is, therefore, illegal under the Supreme Court's decision in *Graham.* For the reasons that follow, we hold that a 99-year sentence without parole is illegal because it does not provide the defendant "with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.*, 560 U.S. at 75, 130 S.Ct. at 2030. Accordingly, we amend the defendant's sentence to delete the restriction on parole eligibility and direct the Department of Corrections to revise

the defendant's prison masters according to the criteria in La. R.S. 15:574.4(D) to reflect an eligibility date for consideration by the Board of Parole. The defendant's second assignment of error regarding the district court's failure to consider mitigating circumstances at his sentencing is procedurally-barred in its current post-conviction status.

## FACTS AND PROCEDURAL HISTORY

The defendant was born on March 31, 1981. On August 9, 1998, at age 17, the defendant approached a vehicle, where parents were engaged in securing their young daughter into her car seat. The defendant, holding a gun, demanded that the father hand over his wallet and keys. At some point, the gun was discharged. The family was able to escape to a friend's house down the street. The defendant subsequently escaped in the family's vehicle. Shortly thereafter, law enforcement located the vehicle. A car chase ensued and ultimately, the defendant crashed the vehicle into a tree and fled on foot. After canvasing a neighborhood, the defendant was located in a shed on private property. The defendant was charged with, and convicted of, armed robbery in violation of La. R.S. 14:64.

The district court imposed the maximum sentence of 99 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. At sentencing, the district court stated, in pertinent part:

> It's the opinion of the Court based on the testimony at trial from the witnesses and the victims that it was [the defendant's] intent to kill either this child or to kill [the male victim].
>
> The Court has reviewed Article 894.1 of the Code of Criminal Procedure and finds as follows: [The defendant's] behavior during the course of this carjack, especially given the fact that there was a baby as a victim in this case and the fact that he discharged this weapon indicates to me that he poses an unusual risk to the safety of the public. He has shown a lack of remorse. Although he may not have any serious criminal history, I find that this was an extremely

dangerous and vicious act on the part of [the defendant]. I find that while through the grace of God that this child survived as well as [the male victim] that there was tremendous psychological and emotional harm done to the victims. I find the potential for rehabilitation for a person that would fire a weapon during the course of a robbery when a child is involved is relatively slim. I find that there is an undue risk that during the period of any suspended sentence, probation, or parole that the defendant will commit another crime. I find he's in need of correctional treatment or a custodial environment that could best be provided by the Louisiana State Penitentiary and his commitment to that institution. I find that any lesser sentence other than the sentence to be imposed by the Court this morning would deprecate the serious nature of the defendant's crime. I find that his conduct during the commission of this offense manifested deliberate cruelty to the victims, the mother and father of this child. I find that [the defendant] knew or reasonably should have known that the victims of this offense were particularly vulnerable or incapable of resistance because of the presence of this baby. I find that by discharging this weapon, although he was not charged with attempted murder or carjacking, he knowingly created a risk of death and great bodily harm to more than one person including a person under the age of 12 years old. I find that he used threats and violence in the commission of this offense.

Therefore, it's the sentence of the Court that you serve 99 years in the custody of the Louisiana Department of Corrections at hard labor with credit for time served to be served without the benefit of probation, parole, or suspension of sentence.

The district court held a hearing on the defendant's motion to reconsider sentence, at which evidence of mitigating circumstances was presented regarding the defendant's learning disabilities, his unstable home environment, the violent culture in which he was raised, his substance abuse, truancy, and lack of criminal history. The district court denied the motion to reconsider and left the sentence intact. The court of appeal affirmed the conviction and sentence.[1] We denied writs thereafter.[2] The defendant also filed two previous unsuccessful applications for post-conviction relief.[3]

---

[1] *State v. Morgan*, 00-0622 (La. App. 4 Cir. 2/21/01), 786 So.2d 983.

[2] *State v. Morgan*, 01-1000 (La. 2/22/02), 810 So.2d 1136.

[3] In his previous post-conviction applications, the defendant claimed counsel rendered ineffective assistance and the district court erred in failing to appoint a sanity commission. *State*

In 2014, the defendant filed a *pro se* motion to correct an illegal sentence in light of recent developments in Eighth Amendment jurisprudence pertaining to the sentencing of juveniles. The district court and the court of appeal denied relief.[4] We granted the defendant's writ application, appointed counsel, and ordered briefing.[5]

## DISCUSSION

The defendant, a juvenile at the time of his offense, assigns two errors. First, he asserts his 99-year sentence without parole is an effective life sentence and is, therefore, illegal under *Graham*. Second, he maintains the district court erred at sentencing by failing to consider his youth and other mitigating circumstances—including mental illness, unstable home environment, and lack of prior convictions.

The State asserts that *Graham* established a categorical rule that "concern[ed] only those juvenile offenders *sentenced to life* without parole solely for a nonhomicide offense." 560 U.S. at 63, 130 S.Ct. at 2023. [Emphasis added]. ("Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole.") (Alito, J, dissenting). Thus, it is the position of the State that a term-of-years sentence, even a lengthy one, is constitutional and is not deemed illegal under the categorical rule established by the United States Supreme Court.

We begin first with a brief review of the line of Eighth Amendment decisions defining what constitutes excessive punishment of juveniles. Starting

---

*ex rel. Morgan v. State*, 12-2523 (La 4/16/13), 111 So.3d 1031; *State ex rel. Morgan v. State*, 04-2375 (La. 6/3/05), 903 So.2d 451.

[4] The district court summarily denied the defendant's motion to correct an illegal sentence; the court of appeal denied writs, having found no error by the district court. *State v. Morgan*, 14-1345 (La. App. 4 Cir. 12/16/14).

[5] *State ex rel. Morgan v. State*, 15-0100 (La. 3/4/16), 188 So.3d 1054.

with *Roper v. Simmons*, 543 U.S. 551, 574, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the United States Supreme Court decided the Constitution prohibits the execution of a defendant for capital murder committed as a juvenile. Then, the Supreme Court announced a new categorical rule when it concluded in *Graham* that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham*, 560 U.S. at 82, 130 S.Ct. at 2034. The Supreme Court then went a step further and decided in *Miller v. Alabama*, 567 U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) that a sentencing scheme which requires life without parole for a defendant convicted of a homicide committed as a juvenile is unconstitutional. *Miller* requires a sentencing court to examine a juvenile homicide offender's "diminished culpability and heightened capacity for change" and only thereafter be in a position to find he is "the rare juvenile offender whose crime reflects irreparable corruption" and who deserves to die in prison. *Miller*, 567 U.S. at ___, 132 S.Ct. at 2469. Thus, although *Miller* did not foreclose the possibility of life without parole for a juvenile homicide offender, it further emphasized that a lifetime in prison is an unconstitutional sentence for all but the rarest juvenile offender. *Id.* (quoting *Roper*, 543 U.S. at 573, 125 S.Ct. at 1197).[6] It has been held that *Roper*, *Graham*, and *Miller* signify "a shift in the nation's moral tolerance" when it comes to the sentencing of juvenile offenders. *State v. Springer*, 856 N.W.2d 460, 465 (S.D. 2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 1908, 191 L.Ed.2d 775 (2015).

---

[6] Just this year, the Supreme Court revisited its rationale for these decisions, when it clarified that *Miller* (like *Roper* and *Graham*) announced a new substantive rule of constitutional law which applies retroactively: ". . . the penological justifications for life without parole collapse in light of "the distinctive attributes of youth . . . [and] sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 (2016), rev'd, (Jan. 27, 2016), *abrogating, inter alia, State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829.

The instant case tasks us with determining whether a 99-year sentence without parole violates the categorical rule established in *Graham*. The rule in *Graham* is premised on the idea that, because juveniles are inherently less culpable, owing to their immaturity and underdeveloped sense of responsibility, they are categorically less deserving of the law's harshest punishments. *Graham*, 560 U.S. at 68, 130 S.Ct. at 2026. Emphasizing that "juvenile offenders cannot [reliably] be classified among the worst offenders," the Supreme Court's primary concern was that a sentencing scheme which allows a juvenile to be imprisoned for the remainder of his life without an opportunity for release, for a nonhomicide offense, "based only on a discretionary, subjective judgment by a judge or jury that the juvenile offender is irredeemably depraved," does not adequately safeguard against grossly disproportionate sentences. *Id.*, 560 U.S. at 67–68, 77, 130 S.Ct. at 2026–27, 2031 (citing *Roper*, 543 U.S. at 570, 125 S.Ct. at 1183).[7] Having determined the Eighth Amendment requires a categorical ban, the Supreme Court made clear that not every juvenile nonhomicide offender would ultimately rejoin society. Rather than having to guarantee eventual freedom, states must ensure a juvenile nonhomicide offender has a "meaningful opportunity for release based on demonstrated maturity and rehabilitation," a requirement which the Supreme Court, per its customary practice, left to the states to implement. *Id.*, 560 U.S. at 82, 130 S.Ct. at 2034. *See, e.g., Atkins v. Virginia*, 536 U.S. 304, 317, 122 S.Ct. 2242, 2250, 153 L.Ed.2d 335 (2002) (the Supreme Court left it to the states to decide how to implement the ban on the execution of intellectually disabled defendants).

---

[7] The Court found a life sentence for such an offender entirely incompatible with the goal of rehabilitation because it "forswears altogether the rehabilitative ideal" in favor of a premature judgment about the juvenile's inherent worth and value to society. *Graham*, 560 U.S. at 71–74, 130 S.Ct. at 2028–30.

In response, by Acts 2012, No. 466, the Louisiana legislature amended R.S. 15:574.4, providing in pertinent part:

> Notwithstanding any provision of law to the contrary, any person serving a sentence of *life imprisonment* who was under the age of [18] years at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1), shall be eligible for parole consideration pursuant to the provisions of this Subsection if all of the following conditions have been met:
>
> > (a) The offender has served [30] years of the sentence imposed[; and]
> >
> > (b) The offender has not committed any major disciplinary offenses in the [12] consecutive months prior to the parole hearing date. . .

R.S. 15:574.4(D) (emphasis added).

To date, *State v. Brown*, 12-0872 (La. 5/7/13), 118 So.3d 332 is the only case in which this Court has considered *Graham's* applicability to a sentence other than an actual life term. In 1999, 16-year-old Brown committed and was subsequently convicted of five nonhomicide offenses (aggravated kidnapping and four counts of armed robbery). The district court sentenced him to life imprisonment "without benefit" plus four consecutive 10-year terms, also "without benefit;" effectively a sentence of life plus 40 years without parole. *Id.*, 12-0872, p. 3, 118 So.3d at 333–34. After the district court granted Brown's motion pursuant to *Graham* and amended all his sentences to delete the parole eligibility restrictions, we found the issue was "whether, and to what extent" *Graham* applied in a case in which a juvenile offender has "committed multiple offenses resulting in cumulative sentences matching or exceeding his life expectancy without the opportunity [for] . . . parole." *Brown*, 12-0872, p. 5, 118 So.3d at 335. This Court found it dispositive that Brown was sentenced for multiple convictions and decided that although he would be parole-eligible on his life sentence after 30 years (under

*Graham* and then-newly enacted R.S. 15:574.4(D)), his consecutive terms of years would remain intact and he would in fact have to wait until age 86 to become parole-eligible. *Id.*, 12-0872, pp. 5–6, 14, 118 So.3d at 334–35, 341.

The State interprets *Brown* to mean that this Court has opined that *Graham* is inapplicable to sentences other than actual terms of life without parole. *Brown*, 12-0872, p. 1 118 So.3d at 332 ("[T]he Eighth Amendment's prohibition of cruel and unusual punishment forbids the imposition of life in prison without parole for juveniles committing nonhomicide crimes, applies only to sentences of life in prison without parole, and does not apply to a sentence of years without the possibility of parole."). In this view, the State argues the defendant's 99-year sentence without parole is legal.

We disagree and find the instant case distinguishable from *Brown* and construe the defendant's 99-year sentence as an effective life sentence, illegal under *Graham*. Whereas Brown was convicted of five offenses resulting in five consecutive sentences which, when aggregated, resulted in a term pursuant to which he would have no opportunity for release; here, the defendant was convicted of a single offense and sentenced to a single term which affords him no opportunity for release. In declining to extend *Graham* to modify any of Brown's term-of-years sentences, we were most influenced by the fact that his actual duration of imprisonment would be so lengthy only because he had committed five offenses. *Brown*, 12-0872, pp. 13–14, 118 So.3d at 341.[8] In contrast, any concern

---

[8] *Brown* drew upon similar cases in which courts have found *Graham* inapplicable to lengthy aggregate sentences. *Id.*, pp. 8–9, 118 So.3d at 336–37 n.3 (citing *Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012) (aggregate 89-year sentence not unconstitutional); *Goins v. Smith*, 2012 WL 3023306 (N.D. Ohio 2012) (aggregate 84-year sentence not unconstitutional); *State v. Kasic*, 228 Ariz. 228, 265 P.3d 410 (Ariz. App. Div. 2 2011) (*Graham* inapplicable to aggregate sentence of 139.75 years for 32 convictions arising from multiple incidents, some committed after the defendant turned 18)). Citing *Bunch, supra*, the Court emphasized that the United States Supreme Court denied certiorari after the Sixth Circuit rejected the defendant's claim that his

8

about a policy that would afford an opportunity for parole to defendants convicted of multiple offenses is not implicated here.

The State maintains the defendant's sentence nevertheless falls outside the scope of *Graham* because it is not an actual life sentence. Although at least one other court has adopted such a view,[9] in that case (as in *Brown*), the defendants were convicted of multiple offenses and had therefore been sentenced to lengthy terms which in the aggregate would deprive them of an opportunity for parole.[10]

The State has not pointed to a single case in which a juvenile convicted of just one nonhomicide offense was sentenced to a single term of years exceeding his life expectancy. In fact, we have encountered only one other such case within the

aggregate sentence for nine offenses was an effective life sentence under *Graham*. *Brown*, 12-0872, pp. 8–9, 118 So.3d at 337–38. Notably, the Sixth Circuit ruling in *Bunch* (which the state court in that case decided pre-*Graham*), was reviewed under the deferential standard of review provided by the Antiterrorism and Effective Death Penalty Act, according to which a federal court can grant relief only if it finds the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law."

[9] For example, in *Vasquez v. Com.*, 781 S.E.2d 920, 925 (Va. 2016), the Virginia Supreme Court found *Graham* applicable only to juveniles sentenced to *life without parole.*

[10] By comparison, the majority of courts have come down the other way, reasoning *Graham* applies to any sentences which deprive a juvenile nonhomicide offender of a meaningful opportunity for release, although, in each, the facts dealt with aggregate sentences for multiple offenses. For example, the Florida Supreme Court found the Eighth Amendment violation identified in *Graham* arises not from the label a sentence is given but rather from the denial of a meaningful opportunity for parole, and therefore found *Graham's* clear intent was for the rule to apply to life and term-of-years sentences alike. *Henry v. State*, 2015 WL 1239696 **4–5 (Fla. Mar. 19, 2015) (defendant sentenced for multiple offenses; "[T]he specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated."); *see also Casiano v. Comm'r of Correction*, 115 A.3d 1031, 1045–47 (Conn. 2015*), cert. denied sub nom., Semple v. Casiano*, 136 S.Ct. 1364, 194 L.Ed.2d 376 (2016) (focus of *Graham* and *Miller* is "not on the label of a 'life sentence'" but rather whether a juvenile offender will be imprisoned for the rest of his life; 50-year sentence without parole is an effective life sentence because it deprives offender of any meaningful opportunity to rejoin society); *State v. Boston*, 363 P.3d 453, 457–58 (2015), *as modified*, (Jan. 6, 2016) (*Graham* applies to any sentence which is the functional equivalent of life without parole; recognizing its holding raised the question of when a term of years becomes an effective life sentence and realizing the Nevada legislature had already decided the issue by providing parole eligibility for *Graham* offenders after 15 years of imprisonment); *Bear Cloud v. State*, 334 P.3d 132, 142, 144 (Wyo. 2014) (juvenile sentenced to "the functional equivalent of life without parole" entitled to relief under *Graham* and *Miller*); *Brown v. State*, 10 N.E.3d 1, 7–8 (Ind. 2014) (*Miller* and *Graham* apply to lengthy term-of-years and aggregate sentences); *Fuller v. State*, 9 N.E.3d 653, 657–58 (Ind. 2014) (same).

*Graham* jurisprudence. In *State v. Springer*, 856 N.W.2d 460, 470 (S.D. 2014), *cert. denied*, 135 S.Ct. 1908, 191 L.Ed.2d 775 (2015), in response to a motion to correct an illegal sentence, the South Dakota Supreme Court examined a juvenile offender's 261-year sentence, imposed for just one count of kidnapping, and found it not an effective life sentence because it would afford him parole eligibility after 33 years, *i.e.,* at age 49. Thus, although the decision in *Springer* did not expressly hold that a single term-of-years sentence can constitute an illegal sentence under *Graham*, because South Dakota law would afford Springer a "meaningful opportunity for release," the court effectively decided that the dispositive issue in such a case was whether the sentence provided a meaningful opportunity for release, not whether it was labeled as a "life" sentence or a "term-of-years" sentence. *Springer*, 856 N.W.2d at 469–70.

Here, in urging this Court is bound by the "life" versus "term-of-years" distinction, the State does not address *Graham*'s mandate that a juvenile convicted of a nonhomicide offense cannot be incarcerated for the duration of his life without a meaningful opportunity for release. *See Graham*, 560 U.S. at 79, 130 S.Ct. at 2033 ("The State has denied him any chance to later demonstrate that he is fit to rejoin society. . . . This the Eighth Amendment does not permit."). Even granting, as the State emphasizes, that the obligation to adhere to binding precedent is limited to specific case holdings and is exclusive of dicta, the State misinterprets *Graham's* holding[11] to the extent it fails to acknowledge its central premise that, because a juvenile nonhomicide offender has diminished culpability, a sentence which, based upon a judgment at the time of sentencing, bars him from ever re-

---

[11] An opinion can be divided into two parts for the sake of its precedential value: its holdings, which consist of "propositions along the chosen decisional path or paths of reasoning," decided based on facts and which lead to judgment; and dicta, which is everything else. Dicta and the Rule of Law, 2013 Pepp. L. Rev. at 8 (citing Michael Abramowicz & Maxwell Steams, Defining Dicta, 57 STAN. L. REV. 953, 959 (2005).

entering society, is a grossly disproportionate punishment. *Graham*, 560 U.S. at 74, 130 S.Ct. at 2030. The district court made such a judgment here when, in sentencing the defendant to the maximum term, he decided his lifetime potential for rehabilitation was "relatively slim," in light of his use of a weapon during the robbery, and that the defendant would represent "an undue risk" to society if ever given an opportunity for parole. In dismissing the penological justification of incapacitation, the *Graham* court specifically rejected such premature judgment about a juvenile's lack of potential for growth and maturity. ("Even if the State's judgment that Graham was incorrigible were later corroborated by prison misbehavior or failure to mature, the sentence was still disproportionate because that judgment was made at the outset." *Graham*, 560 U.S. 73, 130 S.Ct. at 2029.) Later in the *Graham* opinion, the Supreme Court reemphasized its express rejection of denying parole eligibility on the ground of incorrigibility, stating, "existing state laws, allowing the imposition of these sentences based only on a discretionary, subjective judgment by a judge or jury that the offender is irredeemably depraved, are insufficient to prevent the possibility that the offender will receive a life without parole sentence for which he or she lacks the moral culpability." *Id.*, 560 U.S. 77, 130 S.Ct. at 2031.

Moreover, in advocating that *Graham* does not pertain to a term-of-years sentence, the State overlooks that *Graham* itself characterized the sentence at issue in that case, which under Florida law was a life sentence, as a "term-of-years sentence" apparently to distinguish it from a sentence of death. *Graham*, 560 U.S. at 61, 130 S.Ct. at 2022. Arguably, the Supreme Court's use of the "term-of-years" label for Graham's life sentence indicates any term-of-years sentence may implicate the rule, so long as its practical effect is to deny a meaningful opportunity for release. *Graham*, 560 U.S. at 79, 130 S.Ct. at 2032.

11

According to the Department of Corrections' records, the defendant will not become parole-eligible until 2082, after he has reached the age of 101. Thus, he has received the functional equivalent of life without parole. Should we adopt the State's position, his net punishment would be substantially harsher than if he had committed an offense the legislature has deemed more serious, such as aggravated rape or aggravated kidnapping,[12] and had therefore been sentenced to a mandatory life term to which *Graham* squarely applies.[13] If the defendant's 99-year sentence is permissible under *Graham*, he will remain incarcerated for the duration of his life, even as fellow inmates convicted of more serious offenses, *see, e.g., State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939 (consolidated applications ordering parole restrictions deleted from aggravated rape defendants' life sentences, under *Graham*), become parole-eligible after serving 30 years.[14] R.S. 15:574.4(D). And, under the more recent decisions in *Miller* and *Montgomery*, even some inmates convicted of *homicides* committed as juveniles will become parole-eligible after serving 35 years. La. R.S. 15:574.4(E); La.C.Cr.P. art. 878.1; *see State v. Montgomery*, 13-1163 (La. 6/28/16), 194 So.3d 606. If we declined to include the instant 99-year sentence for armed robbery within the scope of the categorical rule established by *Graham*, there could be a perverse incentive to kill one's victims,

---

[12] The mandatory sentence for aggravated rape and aggravated kidnapping is life imprisonment. R.S. 14:42(D)(1); R.S. 14:44. A life sentence, in contrast with the sentencing range provided for armed robbery, *see* R.S. 14:64, indicates the legislature generally deems the former to be more serious than the latter. *See State v. Wilson*, 96-1392, pp. 6–7, 685 So.2d 1063, 1067 ("The legislature alone determines what are punishable as crimes and the proscribed penalties…the decisions of the legislature are indicative of [contemporary] standards [of decency].").

[13] A hypothetical to illustrate the paradox: the defendant would be significantly better off, that is, eligible for parole more than 50 years earlier (at age 46), if, instead of committing an armed robbery of the victims, he had instead taken their car with their child still inside (aggravated kidnapping) or approached them on the street and raped the female victim at gunpoint (aggravated rape).

[14] Before Acts 2012, No. 466, Louisiana inmates serving life for nonhomicide crimes committed as juveniles became parole eligible under *Graham* upon reaching age 45 and having served 20 years in custody. *Shaffer*, 77 So.3d at 942.

rather than the significantly more morally upstanding alternative of allowing them to live. Our holding today, which finds a 99-year sentence to be the functional equivalent of life, resolves any such paradox in favor of common sense and morality.

Mindful that there exists no practical difference, in terms of actual length of imprisonment, between a life sentence and the 99-year sentence at issue, the State offers no compelling reason why *Graham* should be construed as any less applicable to the defendant's lengthy sentence than to the sentence for another nonhomicide offense which under state law happens to be mandatory life. Nothing in *Graham* was offense-specific, aside from the homicide/nonhomicide distinction. That courts would grapple with the "life"/"term-of-years" dilemma, however, was foreseen soon after the Supreme Court handed down its decision. As one academic onlooker put it:

> What difference is there really between 120 years and life besides semantics, because the reality is the same either way. All sentencing courts would have to do is stop issuing [life without parole sentences] and instead start sentencing those same juveniles to 100 years, and the problem is solved. Gone would be the idea that juveniles are different, less culpable, and more deserving of a meaningful opportunity for release. Gone would be the incentive to rehabilitate. Gone would be *Graham*.

Leanne Palmer, *Juvenile Sentencing in the Wake of Graham v. Florida: A Look Into Uncharted Territory*, 17 Barry L. Rev. 133, 147 (2011). *See also People v. Rainer*, 2013 WL 1490107 at 12 (Colo. App. Apr. 11, 2013) ("Based on our consideration of the Supreme Court's Eighth Amendment jurisprudence, and federal and state rulings since *Graham*, we conclude that the term of years sentence imposed on Rainer, which does not offer the possibility of parole until after his life expectancy, deprives him of any 'meaningful opportunity to obtain

release' and thereby violates the Eighth Amendment."); *People v. Caballero*, 282 P.3d 291, 293–95 (Cal. 2012) (*Miller* "made it clear that *Graham's* 'flat ban' on life without parole sentences applies to all nonhomicide cases involving juvenile offenders, including the term-of-years sentence that amounts to the functional equivalent of a life without parole sentence;" *Graham* does not "focus on the precise sentence meted out" but requires some realistic opportunity to obtain release).

Finding that the defendant's lengthy sentence of 99 years is an effective life sentence, we turn now to the issue of ensuring that the defendant's sentence is in compliance with the dictates of *Graham.* The Louisiana legislature has already drawn the line of how many years are required before parole eligibility is available for juvenile nonhomicide offenders who have received a life sentence. Specifically, and as mentioned above, it enacted R.S. 15:574.4(D), to comply with *Graham*, and decided that all defendants serving a life sentence for a nonhomicide offense committed as a juvenile would be parole-eligible (subject to specified disciplinary and other requirements) after serving 30 years. When it arrived at this decision, the legislature affirmatively fixed the point beyond which a juvenile nonhomicide offender in Louisiana cannot constitutionally be incarcerated without an opportunity for parole.

Thus, considerations of equity and consistency require that La. R.S. 15:574.4(D) be construed as applicable not just to those juvenile offenders serving a sentence of life for a nonhomicide offense, but also to those, like the defendant, serving an effective life sentence for a single nonhomicide offense which the legislature deems not so serious as to warrant an automatic life sentence. To conclude otherwise would be to sanction the harsher punishment of those deemed

less culpable by the legislature than of those now indisputably entitled to parole-eligibility under present law. In making this determination, our primary focus is on *Graham's* mandate that "the State must . . . give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75, 130 S.Ct. at 2030. Surely, a release at the age of 102 cannot be held to be a "meaningful opportunity to obtain release." *Id.*

In sum, because the defendant's single sentence is distinguishable from the multiple sentences in *Brown* and provides him no opportunity for parole, it is an effective life sentence, illegal under *Graham*. Considering that he is being punished significantly harsher than those convicted of more serious crimes, we place the defendant on equal footing with the juveniles who have been sentenced to life for nonhomicide offenses. To effectuate this decision, we order the Department of Corrections to revise the defendant's prison master to reflect that his sentence is no longer without benefit of parole and to further calculate a parole eligibility date according to the criteria in R.S. 15:574.4(D), thus satisfying *Graham*. *See, e.g., Shaffer*, 77 So.3d at 942.

We reiterate that we are not ordering the defendant's immediate release on parole, nor or we guaranteeing his eventual release; rather, in compliance with *Graham*, we are imposing a sentence that "provides him [] with some realistic opportunity to obtain release before the end of [an effective life] term. *Graham*, 560 U.S. at 82, 130 S.Ct. at 2034. As we noted in *Shaffer*, "[t]he determination of whether [defendants] may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole "only for the best interest of society, not as an award of clemency. La. R.S. 15:574.4.1(B). Access

15

to the Board's consideration will satisfy the mandate of *Graham*." *Shaffer*, 77 So.3d at 943.

Last, we address the defendant's assignment of error that the district court erred in failing to consider mitigating circumstances at sentencing. We find this argument is procedurally barred. We have previously held the provisions of La.C.Cr.P. art. 930.3 "provide[] no basis for review of claims of excessiveness or other sentencing error post-conviction. *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172. Thus, we decline to consider the defendant's claim regarding the alleged sentencing error. Also, because this claim pertains solely to the district court's discretion in choosing a sentence within the wide range provided by statute, it should have been raised on appeal. *Id.; see also State v. Lanclos*, 419 So.2d 475, 477 (La. 1982) (sentencing judge has wide discretion within statutory limits; failure to comply with La.C.Cr.P. art. 894.1 guidelines does not automatically render sentence invalid). Thus, while it is procedurally appropriate to review the defendant's *bona fide* illegal sentence claim because he points to a now-illegal term under *Graham*, which may be filed at any time (*see* La.C.Cr. P. art. 882), we find the excessive sentence claim is otherwise barred and outside the scope of our review today.[15] *State v. Parker*, 98-0256 (La. 5/8/98), 711 So.2d 694.

## CONCLUSION

For the reasons expressed herein, we hold the categorical rule in *Graham* applies to the defendant's 99-year sentence without parole insofar as it is the

---

[15]   The defendant urges that his trial counsel was disbarred at the time of trial. To the extent he contends this disciplinary matter amounts to a special circumstance that authorizes this court's review of procedurally barred issues, we expressly find that the defendant's trial counsel was not yet disbarred during the 1999 trial of defendant, owing to rehearing delays that follow an order of disbarment.

functional equivalent of a life sentence and denies him a meaningful opportunity for release, to which he is entitled. Because it is an effective life sentence, it is rendered illegal pursuant to *Graham* and can be corrected at any time under La. C.Cr. P. art. 882. We order the deletion of the defendant's parole ineligibility and order that he be designated as parole-eligible in accordance with La. R.S. 15:574.4(D). As noted above, we are not ordering the defendant's immediate release, nor or we guaranteeing his eventual release. Rather, the defendant's access to the Board's consideration for parole will satisfy the mandate of *Graham*." *Shaffer*, 77 So.3d at 943.

All other claims raised are procedurally barred under well-settled law. La. C.Cr.P. art. 930.3 provides no basis for post-conviction claims of trial court sentencing error. *Melinie*, supra.

**AFFIRMED WITH INSTRUCTIONS.**

SUPREME COURT OF LOUISIANA

No. 2015-KH-0100

STATE EX REL. ALDEN MORGAN

VERSUS

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

**CRICHTON, J., additionally concurs and assigns reasons.**

> "I do solemnly swear that I will support the constitution and laws of
> the United States and the constitution and laws of this state. . ."

La. Const. art. X, § 30.

These words, which each justice of this Court affirmed upon taking office, which all Louisiana lawyers affirm, and which the District Attorney also affirms, reflect our solemn duty as members of the judiciary and the broader judicial system to uphold the constitutions of the United States and Louisiana. Despite the clear mandate of the United States Supreme Court in *Graham v. Florida*, 560 U.S. 48 (2010), the Orleans Parish District Attorney has taken the stunning position that this defendant does not face the functional equivalent of life imprisonment and that he would have—in the year 2082 and at age 101—a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.*, 560 U.S. at 75. Even worse, the District Attorney has invited this state's high court to join him in this constitutionally untenable position that directly conflicts with a line of United States Supreme Court cases rolling back excessive punishment of juvenile offenders. *See Graham*, *supra*, *Roper v. Simmons*, 543 U.S. 551 (2005), *Miller v. Alabama*, 567 U.S. -- (2012). This position would, in my view, violate our oath of office insofar as it would contravene the Supreme Court's pronouncements and,

1

therefore, also violate the Supremacy Clause. U.S. Const. art. VI, cl.2. *See State ex rel. Barrabino v. Henderson,* 283 So. 2d 764, 766 (La. 1973) (Tate, J., concurring) ("The United States Constitution as interpreted by that court is binding upon every court in this land, including the Supreme Court of Louisiana. . . ."). *See also generally* La. Rules of Prof. Conduct R. 3.1, 3.3.

Relatedly, I emphasize that the district attorney has an awesome amount of power in our justice system, which encompasses the "entire charge and control of every criminal prosecution instituted or pending in his district," including the determination of "whom, when, and how he shall prosecute." La. C.Cr.P. art. 61. As such, a prosecutor's responsibility is as "a minister of justice and not simply that of an advocate." Model Rules of Prof'l Conduct R. 3.8 cmt[1] (Am. Bar. Ass'n 1983). *See also State v. Tate,* 171 So. 108, 112 (La. 1936) (noting that the district attorney "represents the State, and the State demands no victims. It seeks justice only, equal and impartial justice. . . ."). Given both this power and responsibility, the District Attorney should seek to uphold the integrity of his office by declining to take positions that, as reflected by the 7-0 decision in this case, contravene federal constitutional law.