Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,118-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                     Appellee

versus

DEVONTA J. DAVIS                       Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 370,411

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Annette Fuller Roach

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

WILLIAM JACOB EDWARDS
MARGARET RICHIE GASKINS
SENAE DENEAL HALL
BRITTANY B. ARVIE
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and ROBINSON, JJ.

**ROBINSON, J.**

Devonta Davis was convicted by a unanimous jury as charged of armed robbery and of the responsive verdict of attempted manslaughter. He was sentenced to 20 years at hard labor for his attempted manslaughter conviction. He was also sentenced to 97 years at hard labor without benefit of probation, parole, or suspension of sentence for his armed robbery conviction. The sentences were ordered to be served consecutively.

Davis has appealed his sentences, arguing that the individual sentences are excessive, that the sentences are excessive when ordered to be served consecutively, and that he is entitled to parole eligibility on his armed robbery sentence because he was 17 years old when he committed the offenses. For the following reasons, we affirm his convictions and sentences.

## FACTS

On July 29, 2017, Enedina Zuniga ("Enedina") closed her family's El Compadre restaurant for the night. El Compadre is located on East Kings Highway in Shreveport. Enedina was accompanied by her son Juan Zuniga ("Juan") and her nephews Ismeal Robles and Jose Ignacio, all of whom worked with her at El Compadre. Enedina went to her car, which was parked near the rear of the restaurant. Juan and his cousins went to Juan's truck.

As Enedina sat in her car, two males appeared from behind the restaurant and demanded her purse. One of the men, who was shorter, wore a gray hoodie. The other man wore a darker hoodie. Both men were armed with handguns, wore dark shorts, and had their mouths covered. Enedina

yelled to Juan and her nephews for help. Juan reached his mother and began struggling with the man in the gray hoodie over the purse.

The taller man in the darker hoodie ran away from the back of the restaurant in a southerly direction. As the other man continued to struggle with Juan over the purse, he shot Juan twice in the upper chest before following his accomplice.

Going door to door that night as part of their investigation of the crimes, Shreveport Police Department ("SPD") officers canvassed the neighborhood behind the restaurant in an effort to find any other witnesses.

Jacob Johnston told the police that he heard a gunshot that night as he walked home through a wooded field coming from Alexander Street into the cul-de-sac at East Stephenson Street. A foot trail through the field led from Alexander to East Stephenson. A few moments after hearing the gunshot, he saw two masked and hooded males ride past him quickly on bikes heading in the opposite direction. This location was several streets south of the restaurant.

Enedina's phone was located using an app in a wooded field near the dead-end of East Fairview Street. A purse, wallet, and mail belonging to Enedina were also found in that field. A canine unit tracked a scent from the dead-end of East Fairview back to Alexander before losing the scent.

A search of the field near the East Stephenson cul-de-sac revealed two bikes, a gray hooded sweatshirt, a red bandana, and a pair of gray cotton shorts. The sweatshirt and shorts were found next to one of the bikes.

Both fields where evidence was found are located near El Compadre. Two .40 caliber casings were found in the restaurant parking lot.

Juan has no memory of the shooting. He was in extreme critical condition when he reached the hospital as he had gunshot wounds to both sides of his chest and two exit wounds. Following surgery, he was placed on a breathing machine because his right lung had been removed.

Juan remained unconscious the first seven or eight days at the hospital. When he regained awareness, he was unable to move much because of muscle atrophy. He was also unable to speak clearly because of a trachea tube. He was in the hospital for 50 days, had multiple surgeries, was on a ventilator twice, and had a feeding tube. Juan eventually regained the ability to walk and to speak. He did inpatient physical therapy for three weeks, followed by outpatient physical therapy for four months.

The clothing that was recovered was submitted to the Louisiana State Police crime lab for testing. A DNA report was generated on November 13, 2017. A suspected blood stain on the shorts was found to be consistent with a mixture of DNA from two contributors, with one being a major contributor. Juan was excluded as that major contributor. The DNA profile obtained from the shorts was entered into the CODIS database.

On September 3, 2017, Juan Reyes, a Hispanic male, died after being shot in the chest in Bossier City. Devonta Davis and Alonzo Spires were arrested for the Bossier murder. Bossier City Police Department ("BCPD") investigators were unable to determine if the motive was armed robbery or a drug deal that turned sour. On October 16, 2017, Davis was indicted for the second degree murder of Juan Reyes.

SPD investigators received notification that Davis was a possible DNA match in the El Compadre crimes. On November 13, 2017, Spires was

3

questioned about the El Compadre incident.  He implicated "Mookie," who he said was in jail for murder.

On July 15, 2019, Davis pled guilty to manslaughter in the Bossier murder.  He received a sentence of 15 years at hard labor.  Spires pled guilty to manslaughter and received a 10-year hard labor sentence.

In 2021, Davis's DNA sample was submitted to the Louisiana State Police crime lab.  A supplemental report was done on October 6, 2022.  The suspected blood stain from the shorts was reinterpreted using the latest guidelines.  The DNA profile obtained from that stain was again found to be consistent with a mixture of DNA from at least two contributors, with one being a major contributor.  Davis could not be excluded as being the major contributor.

On October 13, 2019, Davis was charged by a bill of information with the attempted first degree murder of Juan.  On October 6, 2022, Davis was charged by an amended bill of information with the armed robbery of Enedina and the attempted second degree murder of Juan.

*Trial*

A jury trial in this matter began on July 10, 2023.  The jury heard testimony from Enedina, Juan, Ismeal, Johnston, SPD officers and investigators, a BCPD investigator, the surgeon who operated on Juan, and two DNA analysts from the Louisiana State Police Crime Lab.  The jury also heard testimony from Alonzo Spires.

Spires pled guilty to being a principal to the armed robbery of Enedina and received a 15-year hard labor sentence to run concurrent with his sentence in Bossier.  In return, he agreed to testify truthfully against Davis.  Spires testified that Davis went by the name of "Mookie."  Before they rode

4

their bikes to Shreveport from Bossier City on the night of July 29, 2017, there was a discussion with the father of Davis's girlfriend about Spires and Davis going to El Compadre to commit an armed robbery. Spires stated that he was wearing all black clothing that night, while he believed Davis was wearing black and gray clothing. Spires stated that he is 6'2" and taller than Davis. Spires testified that he took off running to their bikes after snatching Enedina's purse and then he heard gunshots behind him. They left their bikes in a field, which is also where Davis removed his clothing.

Davis was found guilty as charged of armed robbery. He was also found guilty of the responsive charge of attempted manslaughter.

*Sentencing*

Davis was sentenced on October 11, 2023. Juan read his mother's victim impact statement as well as his own at the hearing.

Enedina wrote that she had not recovered from the unexpected death of her husband when the shooting occurred. She was scared while being robbed, then felt helpless after Juan was shot. She experienced uncertainty and fear while Juan was in the hospital. She now suffers when she sees how Juan has limitations because of his injuries.

Juan reflected on what he experienced during his recovery. He felt useless because he was dependent on others for personal care. He had back pain from being confined to a bed, and he suffered severe stomachaches when he began eating normal food instead of receiving sustenance through a feeding tube. He had trouble communicating because of his tracheotomy. He also had to learn how to walk again. His body has multiple scars from the gunshot wounds and his medical treatment. His ability to perform physical tasks has been diminished. He remains bitter about what happened

to him. Juan noted that his mother's peace of mind has been taken from her. He asked the court to impose the harshest sentence possible, and he wanted no leniency shown to Davis.

Juan's sister, Gemma Zuniga, also read a statement to the court. She recalled what her family experienced while Juan remained in critical condition. She also recalled how her mother feared that until Davis and Spires were charged with the crime and in custody, they would return and harm her. Her mother worries about Juan's health since he has only one lung. Gemma stated that Juan resents what was taken away from him. He physically struggles when engaged in activities that a healthy man his age would be able to do. Gemma asked that the sentences be imposed consecutively.

The state filed a sentencing memorandum in which it recommended a sentence of 20 years at hard labor for the attempted manslaughter conviction and a sentence of 99 years at hard labor and without benefits for the armed robbery conviction, with both sentences to be served consecutively.

The state considered some of the aggravating factors listed in La. C. Cr. P. art. 894.1 in its memorandum. First, any sentence less than the recommended sentences would create an undue risk to the local community as Davis exhibited a blatant disregard for human life. Second, in addition to the El Compadre crimes, Davis pled guilty to manslaughter in Bossier Parish, and he committed second degree battery on another inmate. Davis's willingness to use extreme levels of violence shows that permanent correctional treatment is required. Third, armed robbery and attempted manslaughter are serious crimes, and any sentence less than the maximum and without benefits would deprecate the seriousness of his crimes. Fourth,

6

Davis's conduct manifested deliberate cruelty as he shot Juan twice in the chest while he tried to defend his mother. Fifth, Davis knowingly created a risk of death or great bodily harm to more than one person as he fired the gun in the direction of Juan's family. Sixth, Davis used a handgun during the commission of his offenses. Seventh, Enedina suffered significant economic loss as she had to take time away from the restaurant to care for Juan. Juan suffered significant permanent injury as he lost a lung, sustained other internal injuries, had to relearn how to walk and speak, and underwent months of treatment and rehabilitation. Eighth, the offenses involved two victims. Ninth, Davis foreseeably endangered human life by firing his gun during the robbery which resulted in serious injuries to Juan. In addition, other family members could have been struck by gunfire.

Davis's counsel then asked the court to consider as mitigating factors that Davis had ADHD and accompanying mental and behavioral issues as a child, he pursued a GED after leaving school in the ninth grade, and his pastor had noted his participation at church with his family.

Before imposing the sentences, the court noted that it relied on the aggravating factors set forth in the state's sentencing memorandum. The court also noted it had reviewed the presentence investigation report which included Davis's significant criminal history.

The court sentenced Davis to 20 years at hard labor for the attempted manslaughter conviction. For the armed robbery conviction, he was sentenced to 97 years at hard labor without benefit of probation, parole, or suspension of sentence. The sentences are to be served consecutively. Defense counsel lodged an oral objection to the sentences.

7

Davis filed a *pro se* motion to reconsider sentence. He argued in part that his consecutive sentences were improper because the armed robbery and the attempted manslaughter were a single act.

Defense counsel filed a motion to reconsider sentence in which it was argued that the sentences were excessive and unconstitutionally harsh. That motion was denied.

**DISCUSSION**

Davis's appellate counsel argues that his sentences are excessive, both individually and together. Counsel further argues that the trial court did not indicate the factors considered in imposing consecutive sentences, and that Davis is a young offender who should be offered the opportunity of rehabilitation.

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full

8

compliance with art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Sandifer*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Bell*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir.

9

5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

If a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. *State v. Heath*, 53,559 (La. App. 2 Cir. 11/10/20), 304 So. 3d 1105, *writ denied*, 20-01422 (La. 4/7/21), 313 So. 3d 981. Consecutive sentences under those circumstances are not necessarily excessive. *Id*. It is within the court's discretion to make sentences consecutive rather than concurrent. *Id*. Factors to be considered in imposing consecutive sentences include the gravity and viciousness of the offense, the harm done to the victims, the risk of danger to the public, the offender's criminal history, and his potential for rehabilitation. *Id*. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer*, *supra*.

Davis's sentences are not excessive when considered individually or together. Davis has demonstrated incredible violence in a short period of time. He shot Juan twice in the chest after Juan intervened in the robbery. Based upon our review of the evidence, this court cannot fathom why he shot Juan. It was not to eliminate a witness, as there were other victims present. Spires testified that he (Spires) already had the purse when he fled ahead of Davis. Even if Juan and Davis were struggling over the purse when Spires fled, there is no indication that Juan was armed. Davis did not have

10

to resort to lethal means to gain control of the purse. Of course, this gives Davis the benefit of the doubt that he did not shoot Juan without any reason.

Not less than two months after shooting Juan, Davis murdered a Hispanic man in Bossier City by shooting him in the chest. Finally, on July 15, 2019, Davis attacked a fellow inmate at the Bossier Parish Maximum Facility while awaiting sentencing in the Bossier murder. The inmate received multiple stitches for cuts to the face. Davis pled guilty to second degree battery and received a sentence of one year at hard labor to be served consecutive with any other sentence.

In conclusion, under the circumstances, the trial court did not abuse its discretion when it imposed a maximum sentence for attempted manslaughter and a near-maximum sentence for armed robbery, and ordered that the sentences be served consecutively. The sentences were clearly justified.

***Parole eligibility***

Davis's counsel further argues on appeal that the armed robbery sentence should have been imposed with parole eligibility because it amounts to a life sentence.

In *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the United States Supreme Court held that the Eighth Amendment forbids the sentence of life without parole for a juvenile offender who has committed a nonhomicide offense. In *State ex rel. Morgan v. State*, 15-0100 (La. 10/19/16), 217 So. 3d 266, the Louisiana Supreme Court extended the holding in *Graham* to sentences that are the functional equivalent to a life sentence.

We note that La. R.S. 15:574.4(J) sets forth the parole eligibility for juvenile offenders serving an incarceration term of 25 years or longer. It states:

J. (1) Notwithstanding any provision of law to the contrary, and except as provided in Subsections D, E, F, G, and H of this Section, any person serving a term or terms of imprisonment that result in a period of incarceration of twenty-five years or more and who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if all of the following conditions have been met:
(a) The offender has served at least twenty-five years of the sentence imposed.
(b) The offender has not committed any major disciplinary offenses in the twelve consecutive months prior to the parole hearing date. A major disciplinary offense is an offense identified as a Schedule B offense by the Department of Public Safety and Corrections in the Disciplinary Rules and Procedures for Adult Offenders.
(c) The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.
(d) The offender has completed substance abuse treatment as applicable.
(e) The offender has obtained or completed at least one of the following:
(i) A literacy program.
(ii) An adult basic education program.
(iii) A job skills training program.
(iv) A high school equivalency certificate.
(f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.
(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.

(2) For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the committee on parole shall meet in a three-member panel, shall consider the impact that the lack of brain development in adolescence has on culpability and behavior, a juvenile offender's unique ability to mature and grow, and any other relevant evidence or testimony pertaining to the offender.

(3) The panel shall render specific findings of fact in support of its decision.

(4) The provisions of this Subsection shall not apply to a person serving a sentence of life imprisonment for a conviction of R.S. 14:30, 30.1, 42, or 44.

In *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526, *writ denied*, 20-00056 (La. 9/8/20), 301 So. 3d 15, Adams, who was 17 years old at the time of his offenses, was sentenced to concurrent sentences of 50 years at hard labor for armed robbery and 25 years at hard labor for conspiracy to commit armed robbery. Both sentences were imposed without benefit of probation, parole, or suspension of sentence. Affirming his sentences, this court rejected Adams's argument that his 50-year sentence without benefits violated his right to equal protection as a youthful offender because it denied him a reasonable expectation of release. When denying Adams's writ application, the Louisiana Supreme Court wrote in a one-page per curiam, "With the enactment of 2020 La. Acts. 99, including R.S. 15:574.4(J), the legislature has provided applicant a meaningful opportunity for parole. As such, his sentencing claims are moot." *Id.*

Accordingly, there is no need for this court to remand this matter to the trial court for the granting of parole eligibility as Davis is presented with the possibility of parole by virtue of La. R.S. 15:574.4(J).

### Outstanding motion to reconsider sentence

Finally, we note that the trial court failed to rule on Davis's *pro se* motion to reconsider sentence, which encompassed an assortment of claims including actual innocence and ineffective assistance of counsel. Regarding his sentences, Davis wrote in his motion that he "also raises Double Jeopardy because armed robbery would have been committed in the act of

13

Attempted Manslaughter making it one single act, not two and further makes his consecutive sentences improper . . ."

Citing La. C. Cr. P. art. 884.1(C), the first circuit has recognized that "[a]ppellate courts are authorized by statute to remand to the district court, when appropriate, for a ruling on an outstanding motion to reconsider sentence." *State v. Joseph*, 2023-0992, p. 6 (La. App. 1 Cir. 4/19/24), 389 So. 3d 201, 204.

Davis's *pro se* motion to reconsider is without merit. The crimes of conviction involved separate victims. As noted earlier, consecutive sentences may be imposed even when a defendant is convicted of two or more offenses based on the same act or transaction. Accordingly, it is unnecessary to remand for a ruling on his outstanding motion to reconsider sentence.

## CONCLUSION

Davis's convictions and sentences are AFFIRMED.

14